IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHNNY RAY HUNLEY, JR.,

Plaintiff,

v.

OPINION AND ORDER

24-cv-842-wmc

CHRISTINE BERNDT-MILES,
LAURIE NEUROTH, and
ERIN WEHRLE,

Defendants,

Plaintiff Johnny Ray Hunley, Jr., a state prisoner held at the Wisconsin Secure Program Facility ("WSPF"), is representing himself and was granted leave to proceed on Eighth Amendment claims of deliberate indifference, as well as a supplemental, medical negligence claim under Wisconsin law. Specifically, plaintiff claims that: (1) defendant Christine Berndt-Miles, the Wisconsin Department of Corrections' ("DOC") dietetic food services director, was deliberately indifferent to his serious medical needs in authorizing an allegedly non-compliant, bland/soft/GERD diet, causing him to experience extreme pain while eating and to skip meals; and (2) defendants Laurie Neuroth and Erin Wehrle, as WSPF's food service director and a nurse clinician, respectively, allegedly knew his prescribed dietary restriction was not being followed and failed to correct it. (Dkt. #6.) Pending before the court is defendants' motion for summary judgment. (dkt. #19.)[1] For the following reasons, the court will GRANT defendants' motion.

[1] Additionally, plaintiff filed a motion asking the court to dispense with or disregard any late reply to his response to defendants' proposed finding of fact. (Dkt. #35.) However, defendants' reply was timely filed. (*See* dkt. #34 (Defendants' Reply in Support of Proposed Findings of Fact filed on June 18, 2026).) Accordingly, plaintiff's motion will be denied as moot.

## BACKGROUND[2]

### A. The Parties

At all relevant times, plaintiff Johnny Hunley was in the custody of the DOC and held at WSPF. During the relevant time period, Nurse Wehrle was employed by DOC as a Nurse Clinician 2 at WSPF. In this role, her duties included: patient assessment and treatment; assistance to the Health Service Unit ("HSU") physicians; management of medications; provision of emergency care; and maintenance of medical records. As the DOC's dietetic food services director, defendant Berndt-Miles' duties included: establishing and implementing department-wide food management policies and procedures; providing problem-solving expertise and consultation for the food service departments at the institution level; and reviewing and analyzing menus from approximately 23 state correctional institutions, including WSPF, to ensure they are nutritionally sound and met all medical and religious requirements. Finally, defendant Laurie Neuroth was employed by DOC as WSPF's food service administrator and generally responsible for: the planning, direction, and operation of the complex food service program at WSPF, including the preparation, distribution, and service of meals themselves; the supervision of WSPF staff and inmate kitchen workers; the maintenance of security, budgeting, safety, and sanitation at WSPF; the maintenance of its supplies and services; and ensuring that daily inmate nutritional needs were met at WSPF.

[2] Unless otherwise indicated, the following facts are material and undisputed as drawn from defendants' reply to plaintiff's response to their proposed findings of fact (dkt. #34) and defendants' response to plaintiff's proposed finding of fact (dkt. #33).

**B. Inmate Meals and Diets**

At WSPF, three meals a day are prepared for approximately 500 inmates or approximately 1,500 meals per day. Most inmates receive either a general-fare meal or a plant-based, halal, or kosher meal, the latter three according to previously-approved requests. Inmates may also receive a medical diet created in consultation with a "Corrections Registered Dietician" and "the HSU." Thus, the DOC food service manual offers various medical diets based on documented health needs, including low sodium, low fat, low cholesterol, and high protein meal plans.

Although medical diets are generally standardized meal plans that have already gone through extensive planning and nutritional analyses, the HSU's advanced care providers ("ACP") are responsible for ordering a modified meal plan for their individual patients when medically necessary. Once an order from HSU is received, food service checks to make sure it has a menu to accommodate the request. If it does, food services place that inmate on the special diet list and begin providing the inmate with meals consistent with that new diet.

All diet orders are received and implemented by a food service manager or administrator Neuroth. Typically, however, the food service department does not meet regarding the implementation of each and every modified diet. This is especially true if the diet did not deviate from the general menu, such as DOC's "bland/soft/GERD" diet.

**C. Plaintiff's Medical Care**

On September 10, 2023, Nurse Clinician Wehrle spoke with inmate Hunley on the phone regarding a small sore that he had noticed under his tongue. During this

conversation, Hunley also reported that his lower lip was sore and there were sores on the inside of his mouth, making it hard for him to eat. Nurse Wehrle also noted that Hunley had clear speech and spoke in his "normal gait." Accordingly, she initially encouraged him to drink fluids, rest, eat soft and non-acidic foods, and take acetaminophen as directed for pain. She further instructed him to contact HSU if new symptoms occurred or if the current symptoms worsened.

The next day, Hunley was also seen in-person at a sick call appointment with Nurse Shanta Anderson for complaints of a sore mouth. Hunley again reported that the sores in his mouth were causing him discomfort when eating. Nurse Anderson also observed lesions with "raised white patching" on Hunley's tongue and "[r]ed small scant sores on [his] inner lower mucosa behind lips," noting there was "[n]o bleeding or discharge." (Dkt. #22-1, at 22.) Nurse Anderson also encouraged Hunley to stay hydrated and informed him that she would follow up with his advanced medical provider for further recommendations. After receiving an update, Dr. Degiovanni ordered clotrimazole lozenges (a medication used to treat thrush) and fluconazole (an antifungal medication used to treat and prevent infections caused by yeast or fungus).

Again, the very next day, September 12, Hunley was seen by Nurse Nicole Stakston after he reported taking a "bunch of Tylenol" to "help with the pain" while rubbing his mouth. (Dkt. #22-1, at 16-18.) That same day, he was sent to the hospital for emergency care, and upon release, the emergency doctor recommended a bland diet be ordered for 2-3 days to help with his mouth sores. Upon review, Dr. Degiovanni agreed and prescribed him a "bland/soft/GERD" diet for one week, until September 19. Later that day, Hunley

met with Nurse Kaitlin Kinyon for complaints of chest pain and to discuss his new diet. Nurse Kinyon informed Hunley that she would notify the kitchen about his new medical diet, which she did

On September 13, 2023, Hunley submitted an information request, already complaining that he was not receiving his "soft" diet and that he did not understand how cereal could be part of a soft diet. He also submitted a Health Services Request ("HSR"), complaining that his mouth was still causing extreme pain making it difficult to eat or drink and inquiring into the cause of his thrush. That day, Nurse Clinician Wehrle responded to the information request, informing Hunley that the emergency room doctor recommended a bland diet for 2-3 days, not a soft diet, and he should allow the cereal to soften in milk. The next day, September 14, Nurse Wehrle further responded for the HSR by: (1) informing Hunley that the long-term antibiotics he was on may cause oral thrush; (2) scheduling him for a nurse sick call; (3) reminding him that his diet order was in place until September 19; and (4) advising Hunley that he would start receiving his antifungal medications and clotrimazole lozenges later that same day. Also in response to Hunley's complaints, Nurse Wehrle called food services to ensure that they were aware of and following Hunley's prescribed diet order, which they confirmed. Finally, on September 19, Hunley had an appointment with Dr. Degiovanni, who noted the current treatment was resolving his thrush.

## OPINION

In this suit under 42 U.S.C. § 1983, plaintiff claims that defendants violated the Eighth Amendment by being deliberately indifferent to his serious medical needs as

follows: (1) the DOC's dietetic food service director Christine Berndt-Miles authorized a non-compliant, bland/soft/GERD diet, causing him to feel extreme pain while eating and to skip meals; and (2) WSPF's food service director Laurie Neuroth and nurse clinician Erin Wehrle knew his prescribed dietary restriction was not being followed and failed to correct the error. (Dkt. #6.) Defendants have moved for summary judgment on all of plaintiff's claims on the grounds that: defendants Berndt-Miles and Neuroth were not personally involved in the administration of plaintiff's medical diet; and alternatively, all of plaintiff's Eighth Amendment claims fail because he cannot meet the exacting standard of deliberate indifference or demonstrate actual harm. Finally, even if meritorious, defendants assert entitlement to qualified immunity with respect to these constitutional claims.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If that initial burden is met, then the non-moving party must show that material, disputed issues of fact exist, preventing the entry of summary judgment. *Id.*

Moreover, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The mere existence of a scintilla of evidence in support of the nonmoving

party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087-88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Further, while the court must view the record "in the light most favorable to the nonmovant and constru[e] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere "speculation or conjecture." *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). Finally, while pro se litigants are entitled to liberal construction of their pleadings, that "status doesn't alleviate his burden on summary judgment," meaning plaintiff has the burden to come forward with *evidence* that demonstrates a genuine issue of material fact. *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) (citation omitted).

## I. Plaintiff's Eighth Amendment Claims

Plaintiff's only federal claims are that defendants failed to adequately treat his medical needs in violation of the Eighth Amendment, which prohibits "cruel and unusual punishments" caused by deliberate indifference to conditions resulting in the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although the

Constitution does not mandate comfortable prisons, officials have a duty under the Eighth Amendment to provide "humane conditions of confinement" by ensuring that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

To succeed on a claim of constitutionally inadequate medical care in particular, an inmate "must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (citations and internal quotations omitted). For purposes of summary judgment, defendants have conceded that plaintiff's ongoing mouth sores qualified as an objectively serious medical condition. (Dkt. #20, at 5.)

As for proof of the requisite deliberate indifference, however, a plaintiff must show a prison official "*actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original) (citing *Farmer*, 511 U.S. at 837); *see also Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (same). Indeed, the Seventh Circuit recognizes that proof of deliberate indifference is "a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)). Thus, when a prisoner has

received medical treatment for his medical condition, courts will generally defer to a medical professional's professional judgment as to the adequacy of that care *unless* a plaintiff introduces evidence of a departure from ordinary care by: "refus[ing] to take instructions from a specialist"; "fail[ing] to follow existing protocol"; "persist[ing] in a course of treatment known to be ineffective"; "choos[ing] easier and less efficacious treatment without exercising professional judgment"; or "inexplicably delay[ing] … treatment which serves no penological interest." *Petties*, 836 F.3d at 729-31 (internal citations and quotations omitted).

Here, plaintiff's claims against all defendants fail because he has presented *no* evidence that the food served was inconsistent with his prescribed diet. To the contrary, plaintiff's proof is simply that on September 12, 2023, the HSU recommended that he receive a bland diet to prevent unnecessary pain from his mouth sores caused by thrush; his emergency doctor also recommended a bland diet, to which Dr. Degiovanni agreed and prescribed him a bland/soft/GERD diet for one week; *and* in the following days, plaintiff was served the bland/soft/GERD diet but remained in pain, causing him to file complaints and skip meals. Finally, after those complaints, plaintiff claims nothing changed. Because it is undisputed that he in fact received food consistent with WSPF's bland/soft/GERD diet, not just a standardized meal plan developed by DOC through extensive planning and nutritional analyses, but the one prescribed by plaintiff's advanced medical providers, no reasonable jury could find that any defendants, who after all were required to follow those doctors' prescribed medical diet, were deliberately indifferent to his pain by serving him food from that approved dietary plan. *See Petties*, 836 F.3d at 729 (courts will generally

defer to a medical professional's judgment as to the adequacy of care); *Berry v. Peterman*, 604 F.3d 435, 440-41 (7th Cir. 2010) (defendants may not be held liable for deliberate indifference if following advance medical providers prescribed treatment unless obviously wrong).

Plaintiff purports to disagree, arguing that defendants actually departed from their own professional judgment by failing to follow this guidance. In particular, plaintiff highlights "patient education instructions" received, which lists foods he was served while on the bland/soft/GERD diet, including dry cereals and meats, as foods he should avoid while on a soft diet. (*See* dkt. ##31-11 (patient instructions), 31-9 (WSPF Bland/Soft/GERD diet for 9/10/2023-9/19/2023).) However, this fails to create a genuine issue of material fact because plaintiff *was* recommended and ordered to be on a *bland* diet, not a *soft* diet, and even if he was on a soft diet, plaintiff could have softened many of the foods he complained about (for example, allowing milk to soften cereal), and he had the opportunity to select foods that worked best for him during lunch and dinner. Regardless, with no evidence that defendants intentionally deviated from their professional judgment in determining his meals, no reasonable jury could find defendants were deliberately indifferent to plaintiff's medical needs, and they are entitled to judgement as a matter of law.

Further, as to defendants Berndt-Miles and Neuroth in particular, there is no evidence either even knew that plaintiff was having issues with WSPF's typical bland/soft/GERD diet, because they are only involved with an individual inmate's prescribed diet if it is highly specialized. Without evidence of actual knowledge that

plaintiff was prescribed a particular diet, much less of his specific complaints, no reasonable jury could find defendants Berndt-Miles and Neuroth to have acted with deliberate indifference to his medical needs. *See Farmer*, 511 U.S. at 837 (deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference").

In opposition, plaintiff argues that a jury could find these defendants were personally involved because: (1) defendant Berndt-Miles approved the standard medical menus used by the DOC generally and had authority to set dietary policies; and (2) defendant Neuroth facilitated the improper menu at WSPF knowing that it was erroneous. However, neither argument shows that defendants Berndt-Miles or Neuroth *actually knew* that plaintiff's diet was causing him harm. Accordingly, both Berndt-Miles and Neuroth are entitled to summary judgment on plaintiff's claim for this reason as well.

As to defendant Wehrle, while she was made aware of plaintiff's complaints, the evidence shows that she then reached out to food services and inquired whether they were aware of and following plaintiff's prescribed diet order. When they confirmed that they were, Wehrle credibly purports to have believed them and plaintiff has offered no evidence from which a reasonable jury could find that her belief was not in good faith. Accordingly, defendant Wehrle is entitled to summary judgment for this additional reason as well. *Gruenberg v. Gempeler*, 697 F.3d 573, 579 (7th Cir. 2012) ("inadvertence or error in good faith" does not violate Eighth Amendment).

**II. Qualified Immunity**

Alternatively, defendants have asserted the defense of qualified immunity, which protects government officials from liability for damages unless they "violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defense is raised, plaintiff bears the burden of defeating it by showing that: (1) the defendants violated a constitutional right; and (2) the constitutional right was clearly established at the time of the violation. *Garcia v. Posewitz*, 79 F.4th 874, 778 (7th Cir. 2023). "If either inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1044 (7th Cir. 2023) (citation and internal quotation marks omitted).

At a minimum, plaintiff has not shown that any of the named defendants in this case violated his constitutional rights, much less a *clearly established right*, by failing to provide food consistent with his prescribed diet. Because plaintiff has failed to demonstrate the violation of a clearly established right in this case, the court will grant defendants' motion for summary judgment for this additional reason as well.

**III. State Law Claims**

Finally, plaintiff has pleaded a medical negligence claim against defendants under Wisconsin law, which are only before this court through an exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a).[3] Because the court has now dismissed all of

[3] Plaintiff was granted leave to proceed on state law medical negligence claims in a text only order separate from this court's screening order. (Dkt. #14.) These claims were not addressed in defendants' motion for summary judgment.

plaintiff's federal claims, and plaintiff has not alleged any other basis for the exercise of federal jurisdiction over these state-law claims, district courts are encouraged to relinquish supplemental jurisdiction absent unusual circumstances. *See Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Since there are no unusual circumstances that would justify retaining jurisdiction, therefore, the court declines to do so. Accordingly, plaintiff's common law medical negligence claims and will dismiss those claims without prejudice so that plaintiff may pursue them in state court to the extent not time barred.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #19) is GRANTED as to all of plaintiff's Eighth Amendment claims.

2) Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c)(3).

3) Plaintiff's motion requesting this court to dispense with any late reply to his response to defendants' proposed finding of fact (dkt. #35.) is DENIED AS MOOT.

4) The Clerk of Court is directed to enter judgment consistent with this opinion and close this case.

Entered this 30th day of October, 2026.

BY THE COURT:

/s/

________________________________________

WILLIAM M. CONLEY
District Judge